DOWD, WARDEN *v.* SULLIVAN.

[No. 27,351. Filed May 13, 1940.]

*Omer S. Jackson,* Attorney General; *James P. Hughes,* Assistant Attorney General, and *James K. Northam,* Deputy Attorney General, for the State.

*Oscar B. Thiel,* of Gary, for appellee.

FANSLER, J.—The appellee was discharged from the custody of the appellant upon a writ of habeas corpus. In February, 1930, he was convicted of a felony and sentenced for a term of from one to ten years. He was over thirty years of age at the time of his conviction, and therefore was sentenced to serve his imprisonment in the Indiana State Prison. He was released on parole in February, 1932. While at liberty he was charged and convicted of a felony, and sentenced to the Indiana State Prison for a term of ten years. He was returned to the Indiana State Prison by the officer having this commitment, and the commitment was delivered to the warden. Upon his return, he was treated as a returned parole violator, and, under the rules, he was fined three years for parole violation under his first commitment. On October 4, 1935, he was discharged under his first commitment, and held under the second or ten-year commitment, which was treated as beginning at that time. It was contended in the petition for habeas corpus that his term of imprisonment under the ten-year commitment began to run when he was returned to the prison, and that, allowing deductions for good time, which it was conceded he was entitled to, he had served the full second sentence.

The writ was issued upon the theory that his second sentence began to run from the time he was delivered

to the warden under this commitment. It is contended by the state that his ten-year term did not begin to run until he had satisfied the first sentence.

Section 13-210, Burns' 1933, § 13482, Baldwin's 1934, which was enacted in 1857, and which has never been expressly repealed, provides: "The term of service and imprisonment of every convict shall commence from the date of his conviction and sentence." Acts 1857, chapter 56, § 6, page 103.

In 1897 the Legislature enacted certain laws providing for indeterminate sentences. Chapter 53 of the Acts of 1897 (Acts 1897, page 69, § 13-401, et seq., Burns' 1933, § 13597 et seq., Baldwin's 1934) has become known as the Reformatory Act. The last sentence in section 12 of this act (§ 13-411, Burns, 1933, § 13607, Baldwin's 1934) is as follows: "And any prisoner at large, upon parole or conditional release, who shall commit a fresh crime and upon conviction thereof shall be sentenced anew to the Reformatory or the Indiana State Prison shall be subject to serve the second sentence after the first sentence is served or annulled, said second sentence to commence from the termination of his liability upon the first or former sentence." There is no mention of the act of 1857, and no express repeal, but the appellant relies upon this sentence as repealing the former act and as controlling the beginning of sentences upon a second conviction of a paroled prisoner from either the State Prison or the Reformatory.

The title of chapter 53 of the act of 1897, *supra,* is as follows: "AN ACT to establish the Indiana Reformatory, provide for the appointment of a Board of Managers and other officers to conduct and control the same, and authorizing them to prescribe rules and regulations for the government thereof and the prisoners therein, the character of persons who may and shall be

confined therein, the manner of procedure in the trial of all felony cases, except treason and murder in the first and second degree, when the prisoner is more than sixteen and less than thirty years of age, and the sentences that shall be passed upon such persons, and the manner in which such sentences shall be executed, and the transfer of prisoners to and from said Reformatory and the State Prison, changing the name of the Indiana State Prison North, providing for the transfer of the property, contracts and control of the State Prison South to said Reformatory, regulating the disposition of earnings and certain other matters relating thereto and declaring an emergency."

It is contended by the appellant that this title is broad enough to cover prisoners in the Indiana State Prison. It is said in the brief: "It is clearly seen from the title of the Act that it includes the manner of procedure in the trial of all felony cases as well as establishing the Indiana Reformatory and the changing of the name of the Indiana Prison South to the Indiana State Prison. The manner of procedure in the trial of all felony cases applies to each institution." But the title only covers "the manner of procedure in the trial of all felony cases, except treason and murder in the first and second degree, when the prisoner is more than sixteen and less than thirty years of age, and the sentences that shall be passed upon such persons, and the manner in which such sentences shall be executed." "Such persons" refers to prisoners more than sixteen and less than thirty years of age, and "such sentences" clearly refers to the sentences of such persons. The act concerns primarily the creation of the Indiana Reformatory, which is set aside for the incarceration of convicted felons, who are between the ages of sixteen and thirty years. It provides

that persons between those ages, who are convicted of felonies, shall be given an indeterminate sentence, and the act provides for their parole under a specified procedure. Section 12, in which the language relied upon by the appellant is found, deals with Reformatory prisoners committed to the custody of the Board of Managers of that institution.

The appellant contends that the word "any" has a very broad application, and that the provision, "any prisoner at large, upon parole or conditional release," must be construed as meaning all prisoners, and not limited to prisoners who were under control of the Board of Managers of the Reformatory. It is true that the word is general, but it is difficult to escape the conclusion that when it was used the Legislature was thinking of, and intending it to apply to, prisoners under the jurisdiction of the Board of Managers of the Reformatory. Since the title of the act and the remainder of the section deal only with such, it would seem that the rule of *ejusdem generis* would apply. It is said in *State* v. *Hess* (1910), 174 Ind. 495, 501, 502, 91 N. E. 732, 734: "The rule undoubtedly is that where words of specific and limited signification in a statute are followed by general words of more comprehensive import, the general words shall be construed as embracing only such persons, places and things as are of like kind or class to those designated by the specific words, unless a contrary intention is clearly shown by the statute."

The sentence relied upon provides that, when a paroled prisoner commits a fresh crime, upon conviction thereof, he "shall be sentenced anew to the Reformatory or the Indiana State Prison." But the word "anew" may be treated as referring only to the Reformatory. To illustrate: A prisoner,

who was between the ages of sixteen and thirty when he was convicted, would be sentenced to the Reformatory. If paroled, and sentenced for the commission of a new crime, he would be sentenced either to the Reformatory or the Indiana State Prison, depending upon his age at the time of the second conviction. If he were less than thirty at the time of the second conviction, he would be sentenced "anew" to the Reformatory, but if over the age of thirty, he would be sentenced to the Indiana State Prison. In either case he would be subject to serve the second sentence after the first sentence is served. But to make this provision affect prisoners sent originally to the Indiana State Prison would bring into the act a regulation concerning prisoners above the age of thirty years, which cannot reasonably be said to be within the scope of the title.

Strength is lent to this view by the fact that the Legislature at the same session enacted statutes (chapter 143, page 219, and chapter 161, page 241, Acts 1897) providing for the incarceration of male persons over thirty years of age in the Indiana State Prison, and providing for the parole of such prisoners and for their return to the State Prison upon violation of the parole. These statutes make no provision for the completion of the penalty under the first conviction before serving a second conviction incurred while on parole.

Even if it can be said that there is doubt as to whether it was intended that the provision should apply to paroled prisoners of the Indiana State Prison, the doubt must be resolved in favor of the prisoner. The provision undoubtedly extends and increases the length of the combined sentences. In other words, it creates an added penalty, since, under the general statute, the sentences would run concurrently. "It is fundamental that penal statutes are to

be strictly construed; that a statute in derogation of a common right and highly penal in character is only to be applied to cases clearly within its provisions; that penalties may not be created by construction, but must be avoided by construction unless they are brought within the letter and the necessary meaning of the act creating the penalty. This requires that where there is ambiguity it must be resolved against the penalty, and only those cases brought within the statute that are clearly within its meaning and intention." *Manners* v. *State* (1936), 210 Ind. 648, 654, 5 N. E. (2d) 300, 303.

It cannot clearly be said that a provision affecting the length of sentences of prisoners over thirty years of age is within the title of the act relied upon, nor can it be said assuredly and without doubt that the words, "any prisoner," were intended to cover inmates of the State Prison.

Judgment affirmed.

NOTE.—Reported in 27 N. E. (2d) 82.