Donald J. CONRAD, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 57A03–0009–CR–331.

Court of Appeals of Indiana.

April 30, 2001.

Transfer Denied July 18, 2001.

Donald C. Swanson, Jr., Fort Wayne, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Thomas D. Perkins, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge

### Case Summary

Donald Conrad appeals his conviction for unlawful possession of a firearm by a serious violent felon, a Class B felony, and his resulting sentence, which was enhanced because of a finding that he was a habitual offender. We affirm the conviction, but reverse the habitual offender sentence enhancement and remand for resentencing.

### Issues

Conrad presents the following restated issues for our review:

I. whether there was sufficient evidence to support his conviction;

II. whether the statute criminalizing unlawful possession of a firearm by a serious violent felon violates various provisions of the United States and Indiana Constitutions;

III. whether the trial court improperly denied his pro se motion for a continuance sought for the purpose of replacing his public defender with privately retained counsel;

IV. whether his trial counsel rendered effective assistance;

V. whether the trial court should have declared a mistrial when a juror revealed after deliberations had begun that he knew the victim of a 1978 rape of which Conrad had been convicted; and

VI. whether the habitual offender sentence enhancement was improper.

### Facts

The facts most favorable to the conviction and habitual offender finding follow. On October 6, 1999, the Indiana State Police executed a search warrant at a residence in Kimmell. In a room in the basement, officers found a total of eighteen firearms. Gwen Jacobs, the owner of the residence, identified that room as "Don's room." Conrad was asleep in the room when the police came to execute the search warrant. From at least April 1999 to October 6, 1999, Conrad lived in the room fairly continuously, although he would sometimes stay at motels. Conrad shared the room with Erica Jacobs, the cousin of Gwen's husband. Although Conrad did not have a written lease, he paid $100 per week for both he and Erica to live in the basement room. Aside from the firearms, police also found several thousand rounds of ammunition (much of it "loose"), men's clothing, a file box containing records with Conrad's name on them, and a gun safe

containing "intimate" photographs of Conrad and Erica Jacobs. No personal effects of Conrad were found elsewhere in the residence. Conrad also gave a police officer the combination to a locked pistol case, although no weapons or ammunition were found therein, and he told the officer that the key to a locked gun cabinet where several firearms were found was in the basement bedroom.

Because Conrad had been convicted of rape, confinement, criminal deviate conduct, and robbery in 1978, he was charged with unlawful possession of a firearm by a serious violent felon in violation of Indiana Code Section 35-47-4-5. The State also filed an information alleging Conrad was a habitual offender, based upon his 1978 conviction and a 1966 conviction for safe burglary. In order to avoid potential prejudice to Conrad, the trial court granted his motion to trifurcate the trial. In the first phase, the jury considered whether Conrad knowingly or intentionally possessed a firearm without being informed of his prior convictions; in the second phase, the jury was informed of Conrad's 1978 conviction and considered whether Conrad was a "serious violent felon" as defined by the statute; finally, in the third phase, the jury was to consider whether Conrad was a habitual offender. After the jury found Conrad knowingly possessed a firearm and that he was a serious violent felon, however, Conrad personally informed the trial court that he wished to waive a jury trial on the habitual offender determination. The trial court entered a judgment of conviction for unlawful possession of a firearm by a serious violent felon and then found Conrad to be a habitual offender. It sentenced Conrad to twenty years on the serious violent felon conviction and enhanced the sentence by thirty years because of the habitual offender finding. This appeal ensued.

## Analysis

### I. Sufficiency of the Evidence

Conrad first claims there was insufficient evidence that he possessed the eighteen firearms the State accused him of possessing. When reviewing a conviction for sufficiency of the evidence, this court looks to the evidence most favorable to the State and all of the reasonable inferences to be drawn from such evidence. *Shane v. State*, 716 N.E.2d 391, 395–96 (Ind.1999). We will affirm unless there is no way a reasonable trier of fact could have found the defendant guilty. *Id.* We neither reweigh the evidence nor assess the credibility of witnesses, but rather look to the evidence to determine whether there was substantive probative evidence to support the judgment. *Id.*

A conviction for possession of contraband may rest upon proof of either actual or constructive possession. *Goodner v. State*, 685 N.E.2d 1058, 1061 (Ind. 1997). In order to prove constructive possession, the State must show that the defendant had both the intent to maintain dominion and control and the capability to maintain dominion and control over the contraband. *Goliday v. State*, 708 N.E.2d 4, 6 (Ind.1999). To prove the intent element, the State must demonstrate the defendant's knowledge of the presence of the contraband. *Id.* This knowledge may be inferred from either the exclusive dominion and control over the premises containing the contraband or, if the control is non-exclusive, evidence of additional circumstances pointing to the defendant's knowledge of the presence of the contraband. *Id.* To establish the second element of constructive possession, the evidence must demonstrate the capability to exercise control over the item, that is, the ability to reduce the item to his personal possession or to otherwise direct its disposition or use. *In the Matter of J.L.*, 599 N.E.2d

208, 212 (Ind.Ct.App.1992), *trans. denied.* Control in this sense concerns the accused's power, by way of legal authority or in a practical sense. *Id.*

■ Here, the possession over the premises where the firearms were found was non-exclusive; thus, we must examine the evidence most favorable to the conviction to determine whether there were additional circumstances permitting a conclusion that Conrad constructively possessed the firearms. We have little difficulty concluding the evidence was sufficient. The firearms were found in a room identified by one of the owners of the residence as "Don's room" where he was sleeping when police arrived; many of the firearms were in plain view upon entry into the room or located in an easily identifiable gun cabinet (the key to which Conrad evidently had access); and the room contained personal effects of Conrad that were in close proximity to the firearms. Contraband being in plain view and in close proximity to other items associated with the defendant are two "additional circumstances" by which constructive possession of contraband may be proven where the defendant's control over the premises on which the contraband is found is non-exclusive. *Ladd v. State,* 710 N.E.2d 188, 190 (Ind.Ct. App.1999).[1] As a practical matter, Conrad had the ability to reduce the firearms to his personal control at a moment's notice. The public safety purpose of a statute prohibiting serious violent felons from possessing firearms would be greatly undermined if such a felon could live in a room containing, a veritable arsenal of firearms and ammunition, yet subsequently claim they were not really his or not readily available for his use.

Conrad's sufficiency argument is primarily an invitation for us to reweigh the evidence and judge the credibility of witnesses, particularly with respect to Erica Jacobs' claims that the firearms were hers and that she considered the basement room to be hers alone. The fact that Erica shared the basement room with Conrad and, thus, she arguably shared possession of the firearms is not dispositive, because possession by the defendant need not be exclusive and contraband can be possessed jointly. *J.L.,* 599 N.E.2d at 212. Nor would reversal be required if we were to accept as true Erica's protestations and Conrad's argument that she technically owned the firearms through her purchase of them because "[t]he issue ... is not ownership but possession" of the contraband. *Goliday,* 708 N.E.2d at 6. It was the jury's prerogative, to judge Erica's credibility and weigh her testimony against the other evidence of constructive possession, which was sufficient to support Conrad's conviction.

## II. Constitutionality of Indiana Code Section 35–47–4–5

■ Conrad claims that the criminalization of possession of a firearm by a serious violent felon by Indiana Code Section 35–47–4–5 violates various provisions of the United States and Indiana Constitutions. Since Conrad filed his brief in this matter, this court has addressed and rejected many of the constitutional arguments raised by Conrad. We reaffirm those holdings. First, the serious violent felon statute is not an ex post facto law in

1. The facts here are strikingly similar to *Ladd,* where we affirmed a finding that the defendant constructively possessed marijuana where it was found in plain view in a room containing financial records of the defendant and a photograph of the defendant with his girlfriend. *Ladd,* 710 N.E.2d at 191. However, the facts here are even stronger, because there was no direct evidence the bedroom where the marijuana was found belonged to the defendant, *id.,* whereas the basement room here was clearly identified as Conrad's.

violation of Article I, Section 10 of the United States Constitution and Article I, Section 24 of the Indiana Constitution. *Teer v. State*, 738 N.E.2d 283, 287 (Ind.Ct. App.2000), *trans. denied.* Second, Conrad's claim that the serious violent felon statute contravenes the principles of reformation required by Article I, Section 18 of the Indiana Constitution fails because he challenges one statute rather than the penal system as a whole. *See Teer*, 738 N.E.2d at 289. Third, the classification of the serious violent felon statute as a Class B felony does not constitute cruel and unusual punishment or punishment disproportionate to the severity of the offense in violation of the Eighth Amendment to the United States Constitution and Article I, Section 16 of the Indiana Constitution. *Teer*, 738 N.E.2d at 290; *Hatchett v. State*, 740 N.E.2d 920, 924 (Ind.Ct.App.2000), *trans. denied.*

■■■■ Fourth, the serious violent statute does not violate the equal privileges and immunities provision of the Indiana Constitution.[2] Ind. Const. art. I, § 23. This provision imposes two requirements upon statutes granting unequal privileges or immunities to differing classes of people. First, the disparate treatment accorded by the legislation must be reasonably related to the inherent characteristics that distinguish the unequally treated classes. *Collins v. Day*, 644 N.E.2d 72, 80 (Ind.1994). Second, the preferential treatment must be uniformly applicable and equally available to all persons similarly situated. *Id.* Making a slightly different argument than either Teer or Hatchett, Conrad primarily claims the serious violent felon statute irrationally imposes disparate treatment insofar as it creates a sub-class of felons that includes those found guilty of attempts and conspiracies to commit certain crimes, which he claims do not meet "the most basic definition of a violent offense" because they do not entail the actual use of force against persons. Appellant's Brief p. 20. We are not persuaded that a crime cannot logically be considered a "serious violent felony" because it was an attempt or a conspiracy to commit another crime. This is true in light of the fact that our legislature has determined that attempts or conspiracies to commit another crime should carry the same penalty as the choate crime, except in the case of murder, thus indicating that attempts and conspiracies are generally considered to be equally detrimental to society as successful completions of the choate crimes. *See* Ind.Code §§ 35–41–5–1 and 35–41–5–2. The inclusion of attempts and conspiracies in the definition of "serious violent felony" does not lead to irrationally imposed disparate treatment. Like Teer and Hatchett, Conrad makes no cogent argument regarding the second part of the *Collins* test. We thus reaffirm our previous holdings that the serious violent felon statute does not violate our state constitution's privileges and immunities clause. *See Teer*, 738 N.E.2d at 288–89; *Hatchett*, 740 N.E.2d at 925.

■■■■ Fifth, Conrad claims the serious violent felon statute violates Article I, Section 32 of the Indiana Constitution, our state's "right to bear arms" provision, and violates substantive due process guarantees. These two arguments are essentially one and the same. Substantive due process prohibits state action that deprives

---

**2.** Conrad actually labeled this portion of his argument "Equal Protection," but he made no argument regarding equal protection under the United States Constitution. Because his argument was based solely on *Collins*, which discussed the privileges and immunities clause of the Indiana Constitution, we have addressed his argument as a privileges and immunities argument.

one of life, liberty, or property without a rational basis for the deprivation. *Teer*, 738 N.E.2d at 289 (citing *Stewart v. Fort Wayne Community Schools*, 564 N.E.2d 274, 279 (Ind.1990), *cert. denied*, 502 U.S. 856, 112 S.Ct. 169, 116 L.Ed.2d 133 (1991)). The dispositive question is whether the serious violent felon statute's deprivation of the liberty and property interest protected by Article I, Section 32 of the Indiana Constitution is without rational basis. We again conclude that "[t]he legislative decision to prevent serious violent felons from possessing potentially deadly weapons cannot be said to be without rational basis" and, thus, Conrad's substantive due process challenge fails. *Teer*, 738 N.E.2d at 289.

 Finally, Conrad raises one constitutional challenge not addressed by either *Teer* or *Hatchett*. He claims the serious violent felon statute punishes a defendant based on his or her "status" as a serious violent felon in contravention of the Eighth Amendment to the United States Constitution. *See Robinson v. California*, 370 U.S. 660, 666–67, 82 S.Ct. 1417, 1420–21, 8 L.Ed.2d 758 (1962). We disagree. In *Klein v. State*, 698 N.E.2d 296 (Ind.1998), our supreme court held that our state's criminal gang activity statute did not punish individuals based merely on their status as a criminal gang member because the statute additionally required proof that an individual was aware of the gang's criminal purpose. *Id.* at 300. Likewise, a person cannot be convicted simply for being a "serious violent felon" because the statute requires additional proof that such a felon intentionally or knowingly possessed a firearm. It cannot be said that the serious violent felon statute punishes individuals based on status alone.[3] Conrad's multiple claims of unconstitutionality are unavailing.

### III. Continuance Motion

 Conrad next claims the trial court denied him his right to counsel of his choice under the United States and Indiana Constitutions when it denied his pro se motion for a continuance filed for the purpose of retaining private counsel to replace his court-appointed attorney. A criminal defendant does have the right to choose counsel when he or she is financially able to do so. *Lewis v. State*, 730 N.E.2d 686, 688–89 (Ind.2000). However, it is well settled that the right to counsel of choice must be exercised at an appropriate stage of the proceedings. *Id.* at 689. When a trial court denies a defendant's continuance sought for the purpose of obtaining counsel of his or her choice, we review the trial court's decision to determine whether it acted unreasonably and arbitrarily. *Id.* at 689–70.

We cannot conclude the trial court acted unreasonably and arbitrarily. Conrad filed his motion one week before his trial was scheduled to begin and approximately five months after the trial date had been set. In that five-month period, Conrad took no action to seek a continuance or communicate his desire to replace his court-appointed attorney with private counsel. The trial court reasonably rejected Conrad's explanation that he was un-

3. Conrad also invokes double jeopardy as a basis for invalidating the serious violent felon statute. However, he provides no cogent double jeopardy analysis, either state or federal. He merely quotes our supreme court's statement in *Pinkston v. State*, 436 N.E.2d 306, 307–08 (Ind.1982) that "[i]f the status of being an habitual criminal were to be considered a separate crime, conviction would be unconstitutional as double jeopardy." To the extent Conrad's double jeopardy argument is based on a claim that the serious violent felon statute constitutes a status crime, we have already rejected that claim and thus the double jeopardy argument as framed is also rejected.

able to communicate this desire while he was in jail, stating that even if a phone was not available to him he could still have communicated by letter. Furthermore, it noted Conrad had bonded out of jail approximately one month before the continuance motion was filed. The trial court also expressed its confidence in the experience of Conrad's court-appointed attorney. Additionally, the prosecutor noted that extensive trial preparation had already taken place in reliance on the following week's trial date. Finally, as in *Lewis,* the private counsel Conrad wished to retain told the trial court that he would not make an appearance unless the continuance motion was granted. Thus, this was not a case where the trial court improperly refused to accept private counsel's appearance. *See id.* at 689 n. 2 (distinguishing *Barham v. State,* 641 N.E.2d 79, 84–85 (Ind.Ct.App. 1994), where this court concluded the trial court unreasonably prevented privately-retained counsel from entering an appearance for the defendant). The trial court did not err in denying Conrad's continuance motion.

### IV. Ineffective Assistance of Counsel

We analyze claims of ineffective counsel according to a two-part test announced in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Jackson v. State,* 683 N.E.2d 560, 562 (Ind.1997). To prevail on such a claim, a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms, and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Bufkin v. State,* 700 N.E.2d 1147, 1150 (Ind. 1998). To succeed, the defendant must demonstrate both deficient performance and resulting prejudice. *Douglas v. State,* 663 N.E.2d 1153, 1154 (Ind.1996). A deficient performance is that which falls below

an objective standard of reasonableness. *Id.* Prejudice exists when there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Cook v. State,* 675 N.E.2d 687, 692 (Ind. 1996). There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Monegan v. State,* 721 N.E.2d 243, 250 (Ind.1999). A defendant "must offer strong and convincing evidence to overcome the presumption that counsel prepared and executed an effective defense." *Benefiel v. State,* 716 N.E.2d 906, 912 (Ind. 1999), *cert. denied,* 531 U.S. 830, 121 S.Ct. 83, 148 L.Ed.2d 45 (2000).

Although egregious errors may be grounds for reversal, we do not second-guess strategic decisions requiring reasonable professional judgment even if the strategy or tactic, in hindsight, did not best serve the defendant's interests. *Id.* "Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord that decision deference." *Conner v. State,* 711 N.E.2d 1238, 1248 (Ind.1999), *cert. denied,* 531 U.S. 829, 121 S.Ct. 81, 148 L.Ed.2d 43 (2000). Strategic decisions do not constitute ineffective assistance of counsel. *Smith v. State,* 689 N.E.2d 1238, 1244 (Ind.1997).

We note that the "Issues Presented for Review" section of Conrad's brief lists fifteen alleged indicators of ineffective assistance that do not precisely parallel the ineffective assistance claims in the "Argument" section of his brief. We will attempt to address the numerous ineffective assistance claims as presented in the "Argument" section. Several of these claims are not supported in any fashion by either citation to the record, or to authority, or both, resulting in waiver of their consider-

ation. *See Johnson v. State*, 693 N.E.2d 941, 954 (Ind.1998). These claims include: (1) that trial counsel failed to interview witnesses; (2) that trial counsel failed to properly communicate with Conrad prior to trial; and (3) that trial counsel should have filed a motion to suppress admission of the firearms because of a purported Fourth Amendment issue. There is nothing in the record to support the first two factual allegations; as for the third allegation, although the record reveals that no suppression motion was filed, Conrad fails to make any argument whatsoever to identify what the purported Fourth Amendment issue was.

■ Conrad claims that trial counsel should have introduced into evidence certain receipts indicating that Erica Jacobs had purchased the eighteen firearms at issue. However, the decision not to introduce those receipts, if they were available to trial counsel, was clearly a matter of trial strategy that we will not now second guess. Trial counsel may have properly recognized, as we held in the "Sufficiency of the Evidence" portion of this opinion, that who owned the firearms was not dispositive as to the issue of whether Conrad constructively possessed them.

■ Conrad also asserts that "[t]he State's initial labeling of the room in which the weapons were found pursuant to the search as 'Don's room' and its subsequent use by various other witnesses was an evidentiary harpoon which should have been objected to and was not by Appellant's counsel." Appellant's Brief pp. 35–36. There are several difficulties with this argument. First, "[a]n evidentiary harpoon is the placing of inadmissible evidence before the jury with the deliberate purpose of prejudicing the jury against the defendant." *Moffatt v. State*, 542 N.E.2d 971, 974 (Ind.1989). Conrad fails to explain how the labeling of the room in question as "Don's room" constituted inadmissible evidence. Second, although it was done at the request of the prosecutor, Gwen Jacobs initially and physically labeled the room as "Don's room" on a map of the residence's basement based on her testimony that the room was his and Erica's. Finally, we note that the prosecutor subsequently referred to "the room marked 'Don's room'," "what has been marked by another witness as 'Don's room'," and the like. Record pp. 133, 172. Conrad fails to adequately argue upon what basis the trial court should or would have sustained an objection to the prosecutor's statements if one had been made. In order to establish ineffective assistance of counsel based on a failure to make an objection, it must be demonstrated the objection would have been sustained. *Edgin v. State*, 657 N.E.2d 445, 447 (Ind.Ct.App. 1995), *trans. denied*.

■ Conrad claims trial counsel should have objected to two of the trial court's final instructions. In order to establish that counsel's failure to object to a jury instruction was ineffective assistance of counsel, a defendant must first prove that a proper objection would have been sustained. *Potter v. State*, 684 N.E.2d 1127, 1132 (Ind.1997). Jury instructions are solely within the discretion of the trial court. *Young v. State*, 696 N.E.2d 386, 389–90 (Ind.1998). Such abuse does not occur if the instructions, considered as a whole and in reference to each other, do not mislead the jury as to the applicable law. *Id.*

The relevant part of final instruction number four read as follows:

Proof of dominion and control of an object necessary to show constructive possession of an object can be found through various means, including but not limited to: (1) any incriminating

statements made by the defendant; (2) any attempted flight or furtive gestures; (3) location of substances like drugs in settings that suggest manufacturing; (4) proximity of the object to the defendant; (5) location of the object within the defendant's plain view; and (6) the mingling of the object with other items owned by the defendant.

Record p. 223. This is a nearly verbatim statement of a constructive possession standard set forth by our supreme court in *Henderson v. State*, 715 N.E.2d 833, 836 (Ind.1999), and thus it is a correct statement of the law. Conrad claims that item number three (3) in the above list of factors should not have been read to the jury because of its reference to the manufacturing of drugs, which were not at issue in this case. However, we fail to see how this instruction prejudiced Conrad. There was brief mention that marijuana plants were found in the basement of the residence. However, there was no indication of any marijuana found in "Don's room," and the entirety of the court's final instructions clearly informed the jury they were solely to determine whether Conrad knowingly or intentionally possessed a firearm, not whether he possessed drugs. Thus, although the third factor in final instruction number four was superfluous under the facts of the case, it accurately stated the law and we see no indication of prejudice. *Cf. Potter*, 684 N.E.2d at 1132 (holding no prejudicial error necessarily occurs when a trial court reads a jury instruction defining a crime in broader terms than the language of the charging information when the jury is plainly made aware that it can only convict upon a finding the defendant committed the specific acts charged in the information).

 Conrad also challenges final instruction number three:

The trial of this case will be in two stages. This first stage you will be asked to make a finding of fact and will determine whether the defendant possessed a firearm on October 6, 1999 in Noble County, Indiana. That is the sole issue for you to decide at this stage. In the second stage, there will be a trial on additional issues that will be presented and explained at that time. You are not to speculate or guess as to what other issues may be presented later. The sole issue at this stage is to find whether the defendant was in possession of a firearm. At this point you will not be finding the defendant guilty or not guilty of any crime.

Record p. 222. Conrad attacks this instruction on the basis that it does not say the State must prove its case beyond a reasonable doubt. However, the purpose of this particular instruction was to note the bifurcated nature of the proceedings and to dissuade the jury from speculating as to what evidence might be presented at the next stage of the trial. Additionally, other instructions properly noted the State was required to prove its case beyond a reasonable doubt; in fact the reasonable doubt requirement was reiterated to the jury at least six times. Taking the instructions as a whole, we cannot say the jury was misled as to the appropriate standard of proof and any objection to instruction number three would have been properly overruled.

 Conrad claims trial counsel should have objected to comments made by the trial judge after the jury found Conrad had knowingly or intentionally possessed a firearm at stage one of the proceedings and before it began deliberations on stage two: whether Conrad was a serious violent felon. Those comments included, in reference to trial counsel's stipulation to the introduction of the record of

Conrad's 1978 conviction, "the next portion of the trial will not, uh, should not take very long .... you really won't have to make a whole lot of difficult decisions from here on out .... it's my understanding there's really not any, um, contention, there's no disagreement among the parties." Record pp. 229–30. However, to succeed on a claim of judicial partiality, a defendant must demonstrate (1) the trial judge's action and demeanor crossed the barrier of impartiality and (2) such conduct prejudiced the defendant's case. *Timberlake v. State*, 690 N.E.2d 243, 256 (Ind. 1997), *cert. denied* 525 U.S. 1073, 119 S.Ct. 808, 142 L.Ed.2d 668 (1999). Conrad makes no claim that the records of his 1978 conviction were insufficient in any way to prove that he was a serious violent felon. Therefore, without addressing the propriety of the trial judge's comments, there is no indication that they prejudiced Conrad and any objection to the comments would have been without effect.

■ Conrad claims trial counsel should have objected to the State's filing of supplemental discovery disclosures near the time of trial. We see no indication of ineffective assistance on this point, given that Conrad has failed to adequately argue precisely how he was prejudiced by the allegedly belated discovery disclosures; we will address each of these disclosures in turn. On April 18, eight days before trial, the State indicated it might call a certain attorney as a witness, and it provided photographs of the crime scene. The attorney was not in fact called, and Conrad fails to explain how eight days was not an adequate period of time for trial counsel to examine the photographs prior to trial. We fail to discern any prejudice from this disclosure.

On April 20, six days before trial, the State filed two supplemental discovery responses. The first concerned plea agreements offered to two state witnesses. One of the witnesses was not called at trial, and the second, Gwen Jacobs, was questioned in detail by the prosecutor about the agreement. Again, we do not believe six days was an inadequate period of time for trial counsel to examine the plea agreements, and the use of Gwen Jacobs' agreement as impeachment material was preempted by the prosecutor's direct examination of her. The second item filed on April 20 was the State's witness list, which consisted of thirteen individuals and which was filed before the trial court's deadline for filing witness lists. Only four of these witnesses were called by the State.[4] Conrad fails to specify that any of these four were "surprise" witnesses that trial counsel was not aware of based on police reports and other discovery provided in October 1999, or that if trial counsel was not previously aware of these witnesses, that he was unable to interview them in the six days before trial. Furthermore, the record reflects trial counsel was able to conduct intelligent cross-examination of the witnesses.

Finally, the State filed a supplemental discovery response on April 25, the day before trial. The response listed an additional witness, a photograph of Conrad, and records from the National Tracing Center as to the ownership of firearms. Once again, this witness was not called and the documentary items were not introduced. Plainly, Conrad could not have been prejudiced by belated discovery when the evidence contained therein was not introduced at trial, and he makes no allegation that the belated items were exculpatory in

4. It appears there may have been a substantial amount of discovery related to charges that the State dismissed shortly before trial, related to cultivation of marijuana, maintaining a common nuisance, and possession of paraphernalia.

any way. Additionally, the witness in this discovery disclosure was apparently a witness with which trial counsel had a conflict of interest; trial counsel effectively did object to the naming of this witness by insisting that the State say on the record that it would not call this witness. Trial counsel also effectively objected to the documentary evidence by saying he had "further objections" to those items, but would not make them as long as the State indicated on the record they would not use those items. Record p. 89.

■ Conrad asserts trial counsel's performance at his sentencing hearing was deficient. He faults trial counsel for not providing any testimonial evidence or exhibits at sentencing, but he fails to indicate to us, and the record does not reflect, what such evidence or exhibits might have been. We will not speculate that there may have been evidence that could have served to reduce Conrad's sentence. Additionally, trial counsel did proffer Conrad's age as a mitigating circumstance, noting he was fifty-three years old and that "at some point, he doesn't present himself as much as a threat to society." Record p. 293. The trial court agreed that this mitigator existed, but found it was outweighed by aggravators that included a lengthy criminal history aside from his 1966 and 1978 convictions and the fact that Conrad was found to have possessed eighteen firearms. Conrad's claim that trial counsel should have argued other mitigators is an invitation to second-guess strategic decisions, which we cannot do. Additionally, this case is clearly distinguishable from *Kellett v. State,* 716 N.E.2d 975 (Ind.Ct.App.1999), cited by Conrad. There, we held trial counsel was ineffective at sentencing primarily for not examining or objecting to an exhibit that erroneously calculated the amount of restitution due to a victim. *Id.* at 982–83. There is no indication here

that trial counsel committed a similarly egregious oversight.

■ Finally, Conrad claims he was denied effective assistance of counsel due to trial counsel's failure to challenge, in any fashion, the State's evidence that he was a serious violent felon because of the 1978 conviction in phase two of the trial. This claim forms the crux of Conrad's argument that his trial counsel's performance was sufficiently deficient to create a presumption of ineffectiveness, without inquiry into counsel's actual trial performance, under *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). There are three circumstances under which a *Cronic* claim may be made: (1) there is a complete denial of counsel; (2) counsel entirely fails to subject the State's case to meaningful adversarial testing; and (3) situations where surrounding circumstances are such that, "although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." *Minnick v. State,* 698 N.E.2d 745, 752 (Ind. 1998) (quoting *Cronic,* 466 U.S. at 659–60, 104 S.Ct. at 2047), *cert. denied,* 528 U.S. 1006, 120 S.Ct. 501, 145 L.Ed.2d 387 (1999).

■ Conrad apparently claims trial counsel entirely failed to subject the State's case to meaningful adversarial testing because of his effective stipulation to Conrad's serious violent felon status. We do not agree. Simply because defense counsel concedes one element of an offense does not necessarily mean there is a presumption that counsel was ineffective. In fact, "unrealistic defenses need not be pursued by trial counsel." *Schick v. State,* 570 N.E.2d 918, 927 (Ind.Ct.App.1991), *trans. denied.* Conrad fails to inform us of

any way a reasonable person could have found he was *not* a serious violent felon based on the documents the State presented relating to the 1978 conviction, and he does not claim those particular documents were in any way defective. Perhaps recognizing this dilemma, trial counsel focused his efforts on the possession element of the charge. He did subject this element, and thus the State's case as a whole, to significant adversarial testing: he successfully moved to keep prejudicial information regarding Conrad's criminal history away from the jury when it considered this element, he conducted meaningful cross-examination of the State's witnesses, and he presented the testimony of Erica Jacobs, who claimed the firearms were hers.[5] This case is distinguishable from *Christian v. State*, 712 N.E.2d 4, 7 (Ind.Ct. App.1999), where this court held trial counsel failed to subject the State's rape case to meaningful adversarial testing when he conceded in closing argument that there was penetration, *in direct contradiction* to his client's testimony that there was no penetration and where the other evidence of penetration was "not overwhelming." Here, the evidence that Conrad was a serious violent felon was overwhelming and he presents no argument to the contrary. In sum, this, and the other claims of ineffective assistance, must fail.

### V. Juror Removal

▇▇▇ Next, Conrad claims the trial court should have declared a mistrial when one of the jurors indicated, after deliberations on phase two of the trial began, that he knew the victim of the 1978 rape, confinement, robbery, and criminal deviate conduct of which Conrad was convicted and that the State used to prove Conrad

was a serious violent felon. Instead of sua sponte declaring a mistrial, the trial court replaced that juror with an alternate. We believe the trial court acted appropriately.

▇▇▇ Conrad's trial counsel failed to move for a mistrial or otherwise object in any way to the trial court's actions in replacing the juror. Thus, review of this issue has technically been waived. *See Abdul–Musawwir v. State*, 674 N.E.2d 972, 975 (Ind.Ct.App.1996), *trans. denied.* However, even if we were to assume a mistrial motion had been made, we conclude that such a motion would have been properly denied. The decision to declare a mistrial lies within the discretion of the trial court. *Jackson v. State*, 728 N.E.2d 147, 151 (Ind.2000). A mistrial is an extreme remedy granted only when no other method can rectify the situation. *Id.* A defendant must demonstrate that the conduct complained of was so prejudicial that it had a probable persuasive effect on the jury's decision. *Id.*

As noted, Conrad's trial was trifurcated in order to keep information about his criminal history away from the jury during phase one of the trial, when it was asked to determine whether he knowingly or intentionally possessed a firearm. Thus, it seems entirely reasonable to assume that the excused juror was unaware that Conrad was one of four individuals convicted of raping an acquaintance of the juror in 1978 until phase two of the trial began, at which time the juror informed the trial court of this knowledge. There is no indication in the record that the juror advised his fellow jury members of this knowledge before he was removed from the jury. Even if he had, we could not conclude that such con-

---

5. Additionally, we must assume trial counsel presented a closing argument at the conclusion of phase one of the trial, although curiously the trial transcript (but not the record, according to its page numbers) contains a gap of ten pages between the beginning of the State's closing argument and the reading of final instructions. Record pp. 221–222.

duct would have been so prejudicial as to have a probable persuasive effect on the jury's decision, given the effective stipulation that Conrad was a serious violent felon and his failure to claim the uncontradicted evidence supporting that conclusion was defective. Hence, the trial court did not err in taking the remedial step of replacing the juror with an alternate instead of declaring a mistrial.

*May v. State*, 716 N.E.2d 419 (Ind.1999), cited by Conrad, provides no authority for the proposition that the trial court should have declared a mistrial. Instead, our supreme court held in that case that the trial court committed reversible error by *not* removing a juror who spoke with a police officer outside of the courtroom during the course of the trial and *not* replacing that juror with an alternate. *Id.* at 422–23. The trial court here did what the trial court in *May* failed to do: it took swift action to remove the juror and replace him with an alternate. There was no error.

### VI. Habitual Offender Enhancement

Finally, Conrad asserts that the enhancement of his sentence pursuant to the finding he was a habitual offender was defective for several reasons. We find one issue to be dispositive: whether our supreme court's decision in *Ross v. State*, 729 N.E.2d 113 (Ind.2000), should effectively preclude enhancement under the "general" habitual offender statute of Conrad's sentence for unlawful possession of a firearm by a serious violent felon. Although *Ross* interprets a different statute and is not directly on point, we hold that Conrad's sentence was improperly enhanced.

Initially, we resolve a procedural matter regarding Conrad's argument based on *Ross*. We observe that Conrad's present challenge to the habitual offender enhancement was not raised at the trial court level; nor is his argument that "double" enhancement of his sentence was improper under *Ross* made as an ineffective assistance of counsel or fundamental error claim in order to avoid waiver. However, Conrad was sentenced on May 22, 2000; our supreme court handed down *Ross* on May 25, 2000. "New rules for the conduct of criminal prosecutions are to be applied retroactively to cases pending on direct review or not yet final when the new rules are announced." *Powell v. State*, 574 N.E.2d 331, 333 (Ind.Ct.App.1991), *trans. denied; see also Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987). Conrad's case was not "final" when *Ross* was decided because the availability of a direct appeal was not yet exhausted. *See State v. Mohler*, 694 N.E.2d 1129, 1133 (Ind.1998). Thus, the principles of that case may be applied to Conrad's case. Also, because *Ross* was not decided at the time of trial, we see no issue of waiver or ineffective assistance because any argument based on *Ross* obviously was not available to trial counsel.[6] *Cf. Ramos v. State*, 541 N.E.2d 300, 302 (Ind.Ct.App.1989), *trans. denied* (holding that where issue in post-conviction relief petition was based on change in applicable law affecting defendant's constitutional rights that was made after his case became final, defendant did not have to allege ineffective assistance of counsel to avoid waiver of issue).

As a matter of statutory interpretation,[7] our supreme court has limited the circum-

---

6. As we discuss below, the most relevant case law available to Conrad at the time of trial was *Thomas v. State*, 684 N.E.2d 222 (Ind.Ct. App.1997), which was adverse to Conrad's

position but which was expressly overruled by *Ross*.

7. Our supreme court has held the repetitive use of prior convictions for sentence enhance-

stances in which the "general" habitual offender statute may be used to enhance the sentence of a defendant convicted of his or her third felony. In *Stanek v. State*, 603 N.E.2d 152 (Ind.1992), it held a Class C felony conviction for operating a motor vehicle after a lifetime revocation of driving privileges could not be enhanced under the "general" habitual offender statute, because the underlying conviction was part of a more specific and "discr[ete], separate, and independent habitual offender statute" related to the violation of traffic laws. *Id.* at 153–54. In *Freeman v. State*, 658 N.E.2d 68 (Ind.1995), our supreme court held the defendant's Class D felony conviction and sentence for operating a vehicle while intoxicated (OWI), already enhanced because of a prior OWI conviction, could not be further enhanced under the habitual substance offender statute. Again, the OWI sentencing scheme was the more specific habitual offender statute, which provided progressive punishment for repeated violations, and it was, thus, the only statute under which the defendant's conviction could be "enhanced." *Id.* at 71. This holding was also reflected in *Devore v. State*, 657 N.E.2d 740, 742 (Ind.1995).[8] However, in *Haymaker v. State*, 667 N.E.2d 1113 (Ind.1996), our supreme court held a prior habitual traffic violator conviction could be used as a predicate offense upon which to base a "general" habitual offender enhancement, where "the current convictions are not already enhanced by a specific habitual offender scheme." *Id.* at 1115.

Relying in part on the quoted language in *Haymaker*, this court held in *Thomas v. State*, 684 N.E.2d 222 (Ind.Ct.App.1997), that the defendant's sentence after being convicted of carrying a handgun without a license, which was a Class C felony instead of an A misdemeanor because of a prior felony conviction within the preceding fifteen years,[9] could be enhanced under the "general" habitual offender statute. We held the defendant's conviction was not already enhanced by a "specific" habitual offender scheme, and that carrying a handgun without a license as a Class C felony was "a separate and distinct crime from the misdemeanor crime of carrying a handgun without a license." *Id.* at 223–24.

In deciding *Ross*, our supreme court expressly disapproved of *Thomas*. *Ross*, 729 N.E.2d at 117 n. 17. It held that convicting a defendant of carrying a handgun without a license and sentencing that defendant as a Class C felon did, in fact, constitute a sentence "enhancement," and that "a misdemeanor conviction under the handgun statute, once elevated to a felony due to a prior felony conviction, should not be enhanced again under the general habitual offender statute." *Id.* at 117. Like *Thomas*, *Ross* was sentenced under that portion of the handgun statute providing for enhanced punishment because of any prior felony conviction within the previous fifteen years, not the portion that provides for enhanced punishment because of a prior conviction for carrying a handgun without a license. Thus, the focus in "double enhancement" sentencing cases involving the "general" habitual offender statute seemed to shift in *Ross* from whether the present crime of which the defendant was convicted was part of a "specific" habitual

---

ment does not violate constitutional double jeopardy principles. *See Woods v. State*, 471 N.E.2d 691, 692–93 (Ind.1984); *see also Ross*, 729 N.E.2d at 116 n. 16.

8. Our legislature responded to *Freeman* and *Devore* by explicitly providing that prior OWI

convictions could be used as predicated offenses for habitual substance offender enhancements. *See Haymaker v. State*, 667 N.E.2d 1113, 1115.

9. Ind.Code § 35–47–2–23(c)(2)(B).

offender or anti-recidivist statutory scheme (defined here as one which provides progressively harsher penalties based on repeated violations of that particular statutory scheme), to whether the defendant's sentence for the present conviction was enhanced on any basis, or at the very least whether the sentence was already enhanced because of a defendant's prior conviction or convictions of any kind.

The *Ross* holding was based on two principles. First, the handgun statute was a specific statute on the same subject as the general habitual offender statute (although not specified in the opinion that subject would appear to be sentence enhancement) and, therefore, the handgun statute was controlling. *Id.* at 116. Second,

> [b]eyond the rule of construction that places specific statutes ahead of general ones, when a conflict arises over the question of imposing a harsher penalty or a more lenient one, the longstanding Rule of Lenity should be applied. 'It is a familiar principle that statutes which are criminal or penal in their nature or which are in derogation of a common-law right must be strictly construed.' *State v. Pence*, 173 Ind. 99, 104, 89 N.E. 488, 490 (1909). Also, 'where there is ambiguity it must be resolved against the penalty . . .' *Dowd v. Sullivan*, 217 Ind. 196, 203, 27 N.E.2d 82, 85 (1940).

*Id.*

A review of federal case law regarding career offender sentence enhancements in the context of the federal statute prohibiting felons from possessing firearms has provided little guidance as to how the federal courts approach this dilemma, especially given the complex sentencing guidelines and procedures that differ greatly from Indiana sentencing procedures. Additionally, the State has not provided us with any argument as to how *Ross* can be fairly distinguished from the present case.

Admittedly, some technical distinctions can be made between *Ross* and the case at bar. First and foremost, *Ross* interprets a different statute than the one before us. In order to be convicted of carrying a handgun without a license, the State need not prove that the perpetrator was felon; a defendant's felon. status only serves to enhance the sentence imposed after a conviction has been obtained. By contrast, one obviously can be convicted of the crime of unlawful possession of a firearm by a serious violent felon only if it is proven the defendant has previously been convicted of a serious violent felony; otherwise, there is no crime. Therefore, the defendant's serious violent felon status does not serve to "enhance" a sentence in the traditional sense of the word. As a practical matter, though, the defendant's serious violent status does realistically serve as an "enhancement" in that it increases the potential punishment for "possession of a firearm" from nothing at all to six to twenty years imprisonment and a fine of up to $10,000, the sentencing range for a class B felony. Ind.Code § 35–50–2–5. Nor can the serious violent felon statute be considered a "specific" habitual offender or anti-recidivist statute because it does not provide for progressively more severe penalties for repeated infractions of that or other related statutes. However, after *Ross* it would appear this is no longer by itself an adequate basis for holding that a defendant's sentence may be enhanced under the general habitual offender statute.

We believe, in light of *Ross,* that we are faced with an ambiguity in potential punishments as between the specific serious violent felon statute and the general habitual offender statute that must be resolved against the penalty. Thus, absent express clarification from our legislature or our

supreme court, we believe it would contradict the Rule of Lenity as applied in *Ross*, and place form over substance, to hold the State may enhance a defendant's sentence for being a serious violent felon in possession of a firearm under the general habitual offender statute by using a conviction that was also used to prove the defendant was a serious violent felon, but that the State may *not* enhance the sentence of one convicted of carrying a handgun without a license by proof of his or her felony status. We decline to so hold.

■ Our decision on this issue is also informed by another familiar principle of Indiana jurisprudence when it comes to sentencing. It is well-settled that a material element of a crime may not also constitute an aggravating circumstance to support an enhanced sentence.[10] *See, e.g., Smith v. State*, 675 N.E.2d 693, 698 (Ind. 1996). Here, of course, we are not concerned with the use of an "aggravating circumstance" as that phrase is used in Indiana Code Section 35–38–1–7.1. Nevertheless, we cannot ignore the fact that Conrad's 1978 conviction was used both to prove a material element of the crime of unlawful possession of a firearm by a serious violent felon *and* to support an enhancement of thirty years to Conrad's sentence. Thus, the double use of the 1978 conviction not only conflicts with the Rule of Lenity and *Ross*, but also with established general principles regarding the enhancement of sentences in Indiana. We, therefore, hold that a defendant convicted of unlawful possession of a firearm by a serious violent felon may not have his or her sentence enhanced under the general habitual offender statute by proof of the same felony used to establish that the defendant was a "serious violent felon."

**Conclusion**

■ There was sufficient evidence that Conrad constructively possessed eighteen firearms. We reject Conrad's constitutional claims regarding the serious violent felon statute. We conclude that Conrad was neither denied his right to counsel of his choice nor denied his right to effective assistance of counsel. The trial court acted properly in replacing a juror with knowledge of Conrad's 1978 conviction with an alternate rather than declaring a mistrial. We affirm Conrad's conviction for unlawful possession of a firearm by a serious violent felon and the resulting twenty-year sentence. However, we hold that enhancement of Conrad's sentence through the general habitual offender statute was improper, and we reverse and remand with instructions to vacate the habitual offender sentence enhancement.

Affirmed in part, reversed in part, and remanded.

BROOK, J., concurs.

BAKER, J., dissents with opinion.

BAKER, Judge, dissenting

I respectfully dissent with the views espoused by the majority and would find that there is insufficient evidence to support Conrad's conviction for possession of a firearm by a serious violent felon and that trial counsel rendered ineffective assistance.

In my view, the majority improperly predetermines that the firearms at issue here are contraband and proceeds to apply the constructive possession analysis applicable to contraband in upholding Conrad's conviction. Specifically, the majority be-

10. A court may, however, consider the particularized circumstances of the criminal act in determining an appropriate sentence. *Id.*

gins its analysis of whether there is sufficient evidence to support Conrad's conviction by stating that, "[a] conviction for possession of *contraband* may rest upon proof of either actual or constructive possession." Op., at 582 (emphasis added). The majority then analyzes the evidence in accordance with the law applicable to the possession of contraband, such as drugs and firearms that are found in motor vehicles.[11]

To me, however, the law regarding the possession of contraband is inapplicable to the case at bar because firearms in the home are not, in and of themselves, contraband. Contraband is defined as "any goods which it is unlawful to import, export, or possess." *Black's Law Dictionary* 317 (7th ed.1999). Here, firearms in the home are not contraband with respect to Erica because she has a constitutional right to keep arms,[12] and the firearms are only contraband with respect to Conrad if it is established that he possessed them. By defining the firearms as contraband and then engaging in a constructive possession analysis, the majority "puts the cart before the horse" and engages in improper application of the law. Rather than relying upon the elements of constructive possession applicable to contraband to support Conrad's conviction, I believe that the majority should have examined the sufficiency of the evidence with respect to whether Conrad *actually* possessed the firearms. From the record, it is apparent to me that there was no actual possession by Conrad.

I would also note that Conrad's trial counsel rendered ineffective assistance in not tendering evidence regarding Erica's ownership of the guns, not objecting to the jury instruction regarding constructive possession, and not objecting to the trial court's reference to the second part of the trifurcated proceedings. Specifically, given the defense's primary argument that Conrad was merely present in the basement where the guns were kept, it was incompetent for Conrad's trial counsel not to have offered into evidence receipts showing that Erica purchased the guns. Such evidence would have bolstered the defense's argument that, while Conrad was found in the room containing the weapons, they were actually purchased and owned by Erica, who was a co-habitant of that room and who testified to being the sole possessor of the firearms.

As previously noted, I believe that the jury instruction regarding constructive possession was inappropriate in this instance as the firearms were not contraband. Moreover, trial counsel was ineffective for failing to object to three elements of that instruction, which were clearly irrelevant to the facts and circumstances of this case and highly prejudicial to his client. In determining whether Conrad was in constructive possession of the firearms, the trial court instructed the jury that it could take into account, among other things, attempted flight or furtive gestures, the location of substances like drugs in settings that suggest manufacturing,

---

**11.** Specifically, the majority cites *Goliday v. State,* 708 N.E.2d 4 (Ind.1999) (applying the constructive possession analysis in a case involving defendant's possession of cocaine and marijuana); *Henderson v. State,* 715 N.E.2d 833 (Ind.1999) (applying the constructive possession analysis in a case involving whether defendant possessed firearms found in his vehicle); *Goodner v. State,* 685 N.E.2d 1058 (Ind.1997) (applying the constructive posses-

sion analysis in case involving cocaine); and *In the Matter of J.L.,* 599 N.E.2d 208 (Ind.Ct. App.1992) (applying the constructive possession analysis in case involving cocaine).

**12.** Article I, Section 32 of the Indiana Constitution provides: "The people shall have the right to bear arms, for defense of themselves or the State."

and the mingling of the firearms with other items owned by the defendant. First, there is no evidence in the record of any attempt to flee or furtive gestures by Conrad. Thus, this element of the instruction was completely irrelevant and highly prejudicial as it raises an inference of bad acts not committed by the defendant. Moreover, our supreme court has repeatedly condemned instructing the jury on the issue of flight. *See, e.g., Dill v. State,* 741 N.E.2d 1230, 1231–33 (Ind.2001). Second, the element of the instruction referencing drugs is highly inappropriate as the manufacture of drugs is not at issue in this case and was likely to invoke anti-drug sentiment in the jury, cause confusion in the minds of the jurors, and result in prejudice towards Conrad. Third, bearing in mind that firearms in the home are not contraband, the trial court's instruction to the jury that it could consider whether Conrad's possessions were mingled with the firearms was improper because the law does not provide that the mingling of personal effects with non-contraband items is evidence of possession of those items.

Finally, I believe that trial counsel was ineffective for failing to object to the trial court's reference in its final instruction number three to the fact that Conrad's trial before the jury would take place in two parts.[13] Specifically, the trial court instructed the jury that the trial of this case would be in two stages, and that in the first stage. the jury must determine whether Conrad possessed the firearm, while in the second stage it would be called upon to decide "additional issues that would be presented and explained at that time." R. at 222. The trial court then informed the jury that it "will not be

finding the defendant guilty or not guilty of any crime" during the first stage. R. at 222. The purpose of bifurcating parts one and two was presumably to insure that consideration of Conrad's prior felony convictions did not enter into the jury's determination on the predicate issue of possession. However, the trial court's instruction seems to imply that the second stage will inevitably take place, thereby assuming that the jury will find possession. The instruction also suggests that the second stage, unlike the first, will involve a determination of whether the defendant is guilty of a crime. I believe that the trial court's reference to the second part of the trial improperly injected an aspect of prejudice into the proceedings that the bifurcation was designed to avoid and that trial counsel was ineffective for failing to object to this prejudicial instruction.

In sum, I believe that there is insufficient evidence to support Conrad's conviction for possession of a firearm by a serious violent felon and that trial counsel's performance was objectively unreasonable and resulted in prejudice to his client. Therefore, I vote to reverse the conviction.

---

13. The proceeding was actually trifurcated. In part one, the trial court required the jury to find whether Conrad possessed the firearms. Then, in part two, the trial court asked the jury to determine whether Conrad was a serious violent felon. Finally, the trial court found Conrad to be a habitual offender.