**Corey MILLS, Appellant–Petitioner,**

v.

**STATE of Indiana, Appellee–Respondent.**

**No. 49A04–0512–PC–722.**

Court of Appeals of Indiana.

Oct. 16, 2006.

Susan Carpenter, Public Defender of Indiana, Jeffrey R. Wright, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Kelly A. Miklos, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Corey Mills appeals the denial of his petition for post-conviction relief ("PCR petition"). We affirm.

### Issue

Mills raises two issues, which we consolidate and restate as whether Mills received ineffective assistance of counsel before pleading guilty, which caused his plea to be unknowing, unintelligent, and involuntary.

### Facts

In 1989, Mills was convicted of robbery, and in 1995, he was convicted of voluntary manslaughter. On September 6, 2002, the State charged Mills with Class A misdemeanor possession of a handgun without a license, Class C felony possession of a handgun without a license, and Class B felony possession of a firearm by a serious violent felon ("SVF") for having allegedly possessed a handgun on or about June 28, 2002. On November 1, 2002, the State filed an additional information alleging that Mills was an habitual offender. The 1995 voluntary manslaughter conviction was both the basis for the SVF charge and one of the alleged prior unrelated felonies in the habitual offender information.

On March 3, 2003, Mills pled guilty to the SVF charge and the habitual offender enhancement.[1] Before sentencing, however, Mills sought to withdraw his guilty plea, asserting that the State could not enhance his Class B felony SVF sentence under the general habitual offender statute by using a prior felony that also was the basis for the SVF charge. The trial court did not allow Mills to withdraw his plea, and on March 28, 2003, it proceeded to sentence him. The plea agreement called for a twenty-year cap on executed time. Although the record before us is not entirely clear, it appears the trial court sentenced Mills to ten years for the SVF conviction, enhanced by ten years for his habitual offender status.

Mills did not appeal the denial of his motion to withdraw his guilty plea. On January 6, 2004, Mills filed a pro se PCR petition, later amended by counsel, which alleged in part that he was misinformed as to the total penalty he faced if he did not accept a plea agreement. Specifically, he contended that his SVF sentence could not be enhanced under the habitual offender statute and that trial counsel had incorrectly advised him that the State could seek such an enhancement. Thus, Mills contended, he was erroneously advised that he faced a potential total sentence of fifty years, rather than twenty, which helped induce him to plead guilty under an agreement that limited his executed sentence to twenty years. On October 24, 2005, the post-conviction court denied Mills's petition. He now appeals.

---

1. Mills also pled guilty to a charge in a separate case. He petitioned for post-conviction relief in that case, which was granted.

## Analysis

Mills contends trial counsel performed deficiently by failing to advise him that the State could not enhance his SVF sentence under the general habitual offender statute by relying in part upon the same felony—the 1995 voluntary manslaughter conviction—that also supported Mills's SVF conviction. Similarly, he claims his guilty plea was not intelligent, voluntary, and knowing, because he was misinformed that he faced a possible penalty of fifty years—twenty for the Class B felony SVF conviction and thirty for an habitual offender enhancement—when in fact no habitual offender enhancement could apply to his SVF sentence.[2]

■■■■ The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. *Walker v. State,* 843 N.E.2d 50, 56 (Ind.Ct.App.2006), *trans. denied.* When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Id.* On review, we will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. *Id.* Further, the post-conviction court in this case entered findings of fact and conclusions of law. A post-conviction court's findings and judgment will be reversed only upon a showing of clear error that leaves us with a definite and firm conviction that a mistake has been made. *Id.*

■■■■ We review claims of ineffective assistance of counsel under the two-part test in *Strickland v. Washington,* 466 U.S. 668,

104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Smith v. State,* 822 N.E.2d 193, 202 (Ind. Ct.App.2005), *trans. denied.* First, the defendant must show that counsel's performance was deficient—that counsel's representation fell below an objective standard of reasonableness and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed the defendant by the Sixth Amendment. *Id.* Second, the defendant must show that he or she was prejudiced by the deficient performance. *Id.* "To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* If a defendant claims that he or she pled guilty because trial counsel gave erroneous advice regarding the maximum penalty the defendant faced, a finding of prejudice requires evidence demonstrating a reasonable probability that the erroneous or omitted advice materially affected the decision to plead guilty. *Segura v. State,* 749 N.E.2d 496, 499 (Ind.2001). Clearly, to succeed on such a claim, the defendant must establish in the first place that counsel's advice regarding the maximum penalty was, in fact, erroneous.

In 2001, this court held "that a defendant convicted of unlawful possession of a firearm by a serious violent felon may not have his or her sentence enhanced under the general habitual offender statute by proof of the same felony used to establish that the defendant was a 'serious violent felon.'" *Conrad v. State,* 747 N.E.2d 575, 595 (Ind.Ct.App.2001), *trans. denied.* The habitual offender statute at the time *Con-*

---

**2.** Mills could have directly appealed the denial of his motion to withdraw his guilty plea. *See Brightman v. State,* 758 N.E.2d 41, 44 (Ind.2001). That motion presented essentially the same argument we address today. We see nothing in the record, however, indicating the trial court advised Mills that he could appeal the denial of his motion to withdraw his guilty plea, nor does the State argue that Mills's failure to directly appeal the denial of his motion resulted in waiver of the arguments he makes today.

*rad* was convicted and sentenced read in part, "The state may seek to have a person sentenced as a habitual offender for any felony by alleging, on a page separate from the rest of the charging instrument, that the person has accumulated two (2) prior unrelated felony convictions." Ind.Code § 35–50–2–8(a) (1999). Interpreting this version of the statute, our supreme court had held in 2000 that a misdemeanor conviction for possession of a handgun without a license, once elevated to a felony due to a prior felony conviction, cannot be enhanced again under the general habitual offender statute. *Ross v. State,* 729 N.E.2d 113, 117 (Ind.2000). We relied in large part upon *Ross* in deciding *Conrad.*

On the day before we handed down *Conrad,* the legislature passed a bill amending Indiana Code Section 35–50–2–8, and the governor signed it approximately a week later. As amended, the statute now reads in part:

> (a) Except as otherwise provided in this section, the state may seek to have a person sentenced as a habitual offender for any felony by alleging, on a page separate from the rest of the charging instrument, that the person has accumulated two (2) prior unrelated felony convictions.
>
> (b) The state may not seek to have a person sentenced as a habitual offender for a felony offense under this section if:
>
> > (1) the offense is a misdemeanor that is enhanced to a felony in the same proceeding as the habitual offender proceeding solely because the person had a prior unrelated conviction. . . .

I.C. § 35–50–2–8 (2006). We have stated, "It is evident that new subsection (b)(1) in Indiana Code Section 35–50–2–8 is a legislative endorsement of our supreme court's interpretation in *Ross* of the intent behind the general habitual offender statute." *Olatunji v. State,* 788 N.E.2d 1268, 1272

(Ind.Ct.App.2003), *trans. denied.* In *Olatunji,* we also stated that the amendment "clearly was an attempt to clarify the original legislative intent behind the statute in the wake of *Ross,* not to change the law." *Id.* at 1273.

In 2003, several months after Mills pled guilty and was sentenced, this court again addressed the viability of enhancing a defendant's SVF sentence under the general habitual offender statute by using a prior felony conviction that also formed the basis of the SVF conviction. *See Townsend v. State,* 793 N.E.2d 1092 (Ind.Ct.App.2003), *trans. denied.* This time, we analyzed the issue in light of the 2001 amendment to the habitual offender statute. Because of the timing of the amendment in relation to *Conrad,* we rejected the State's argument that the amendment represented an express rejection of *Conrad. Id.* at 1096. However, we also stated that we could not ignore the opening phrase of the new version of the habitual offender statute, namely that an enhancement was proper for any felony, "[e]xcept as provided in this section." *Id.* at 1097. "The use of the same prior felony to create the underlying felony of unlawful possession of a firearm by a serious violent felon and support the habitual offender enhancement does not appear 'in this section.'" *Id.* (quoting I.C. § 35–50–2–8(a)). Thus, we affirmed the habitual offender enhancement of the defendant's SVF sentence, even though both the enhancement and the conviction relied on the same underlying previous felony. *Id.*

■ Mills's argument that his attorney should have informed him of *Conrad's* holding before he pled guilty has merit. An unawareness of that case by a criminal defense attorney, nearly two years after it was decided, is not readily excusable. *Conrad's* holding would have applied directly to Mills's case. Additionally, despite the 2001 amendment to the habitual

offender statute, no appellate court had yet given its opinion as to whether that amendment effectively overruled *Conrad* when Mills pled guilty. Therefore, at the time of Mills' plea, the effect of the amendment was not clear.

That is not the end of our analysis, however. Even if trial counsel had informed Mills of *Conrad* and even if Mills had decided to challenge any enhancement of his SVF sentence on the basis of *Conrad*, *Townsend* demonstrates that this court would have rejected such an argument. Thus, according to *Townsend*, Mills's trial attorney did not misadvise him as to the total sentence he faced in this case. Implicitly recognizing this, Mills asserts that *Townsend* was incorrectly decided and the rule espoused in *Conrad* is still valid, despite the 2001 amendment to the habitual offender statute.

We disagree. As we observed in *Townsend*, the current version of the habitual offender statute expressly provides that a sentence for *any* felony may be enhanced, subject to certain express restrictions upon enhancement. One of those restrictions is where a crime is classified as a misdemeanor, but may be enhanced to a felony because the defendant has a prior unrelated conviction; in such a situation, the habitual offender statute cannot apply. The SVF statute, however, does not contain a progressive punishment scheme that begins at the misdemeanor level, subject to enhancement to a felony because of a prior conviction. The crime of possession of a firearm by a SVF is always a Class B felony; the statute does not contain its own enhancement scheme independent of the habitual offender statute. *See* I.C. § 35–47–4–5.

■ As we acknowledged in *Conrad*, the handgun statute our supreme court interpreted in *Ross* contains its own independent enhancement scheme, unlike the SVF statute. *See Conrad*, 747 N.E.2d at 594. When we decided *Conrad*, we did not believe this difference between the statutes was sufficient to allow habitual offender enhancement of a SVF sentence through "double" use of a prior felony conviction, but to preclude a similar enhancement under the handgun statute. *Id.* at 594–95. However, the legislature subsequently clarified the intent behind the habitual offender statute through the 2001 amendment. *See Olatunji*, 788 N.E.2d at 1272. When it did so, it plainly and clearly excluded "double" enhancements of the type forbidden by *Ross*—where the base level of a crime is classified as a misdemeanor, subject to enhancement for prior convictions. The legislature did not include language that would preclude the type of enhancement we found impermissible in *Conrad*—where a criminal statute contains no independent enhancement scheme. We must give the words of a statute their plain, ordinary, and usual meaning and must assume that the language employed in a statute was used intentionally. *Townsend*, 793 N.E.2d at 1094.

We also observe that a judicial interpretation of a statute, accompanied by substantial legislative inaction for a considerable time, may be understood to signify the General Assembly's acquiescence and agreement with the judicial interpretation. *See Fraley v. Minger*, 829 N.E.2d 476, 492 (Ind.2005). Since *Townsend* was decided, the General Assembly has had three sessions in which it could have amended the habitual offender statute yet again, if it had believed that *Townsend* was decided incorrectly and the rule announced in *Conrad* was correct. It has not done so. This legislative acquiescence is an indication that *Townsend* correctly interpreted the legislature's intent behind the 2001 amendment to the habitual offender statute.

We reaffirm that *Townsend* was decided correctly. Thus, Mills has not established that he received erroneous advice regarding the maximum possible sentence he faced, despite his trial attorney's failure to inform him of *Conrad.* Mills did not receive ineffective assistance of counsel.

 For similar reasons, Mills has not established that his guilty plea was unknowing, unintelligent, or involuntary. "[P]leas entered after coercion, judicial or otherwise, will be set aside. Defendants who can prove that they were actually misled by the judge, the prosecutor, or defense counsel about the choices before them will present colorable claims for relief." *White v. State,* 497 N.E.2d 893, 905–06 (Ind.1986). As with a claim of ineffective assistance of counsel, a claim of an involuntary plea based on bad advice by counsel must demonstrate that trial counsel in fact misadvised the defendant and such bad advice was material to his or her decision to plead guilty. *See Willoughby v. State,* 792 N.E.2d 560, 563 (Ind.Ct.App. 2003), *trans. denied.* As we have outlined already, Mills was not misadvised about his total possible punishment in this case. There is no basis for concluding that his guilty plea was unknowing, unintelligent, or involuntary.

### Conclusion

The post-conviction court correctly denied Mills's PCR petition because he failed to establish that trial counsel misadvised him as to the maximum possible punishment he faced. We affirm.

Affirmed.

ROBB, J., concurs.

SULLIVAN, J., concurs in result.