Reversed and remanded.

DARDEN, J., and ROBB, J., concur.

**Andre GOODMAN, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee.**

**No. 49A05–0603–CR–00167.**

Court of Appeals of Indiana.

April 4, 2007.

A. Frank Gleaves III, Marion County Public Defender Agency, Indianapolis, IN, for Appellant.

Steve Carter, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, for Appellee.

**OPINION**

SULLIVAN, Judge.

Following a two-phase jury and bench trial, Appellant–Defendant, Andre Goodman, was convicted of Auto Theft as a Class C felony[1] and two counts of Resisting Law Enforcement as a Class D felony[2] and as a Class A misdemeanor,[3] and he was found to be a habitual offender.[4] The trial court sentenced him to an aggregate sentence of ten years executed to be served in the Department of Correction. Upon appeal, Goodman challenges the sufficiency of the evidence to support his convictions and the propriety of the court's enhancing his sentence based upon the habitual offender allegation.

We affirm in part, reverse in part, and remand.

On August 17, 2005, at approximately 11:00 p.m., Indianapolis Police Officer Charles Tice and his passenger, Officer Josh Reece, were patrolling the 1700 block of Draper Street when undercover officers brought their attention to a white four-door vehicle with a loud muffler heading in their direction. Officer Tice began following the car at a distance of about fifteen feet. At some point the vehicle failed to signal a turn, so Officer Tice activated his red and blue emergency lights and followed it through a parking lot and onto State Avenue, at which point Officer Tice activated his siren. The vehicle accelerated, continuing north on State Avenue, subsequently turning east onto Palmer Street when it turned northbound into an alley. Just before reaching an intersection with another alley, Officer Tice observed the vehicle's driver's side door open and a black male jump out of the car. According to Officer Tice, the black male was of medium build, approximately 5'7" to 5'10", and he had a "short cut afro haircut." Tr. at 25. Officer Tice also testified that the driver was wearing blue jean shorts, a gray T-shirt and white tennis shoes and continued to run northbound through the alley, where he took an eastbound turn

---

1. Ind.Code § 35–43–4–2.5 (Burns Code Ed. Repl.2004).

2. Ind.Code § 35–44–3–3(b) (Burns Code Ed. Repl.2004).

3. I.C. § 35–44–3–3(a).

4. Ind.Code § 35–50–2–8 (Burns Code Ed. Supp.2006).

around a house. The abandoned vehicle, which had not been brought to a complete stop, rolled into two trash cans and hit a chain link fence, where it came to a stop. Officer Tice testified that he jumped out of his car and pursued the driver, shouting at him to stop and identifying himself as a policeman. Officer Tice testified that he lost track of the driver after he took an eastbound turn around a house.

After Officer Tice lost track of the driver, he returned to the vehicle to assist Officer Reece with the other two passengers in the white vehicle. Upon examining the vehicle, he observed that the steering column was cracked open, which exposed the ignition system, and that there was a screwdriver inside the car, which Officer Tice testified was the type of tool used to pry into steering columns for purposes of starting the vehicle without a key.

Approximately five to ten minutes after first observing the white vehicle near Draper Street, Officer Tice was notified by Officer Cameron Brosseau that an individual had been detained in the 1800 block of Pleasant Run Parkway South Drive, approximately 300 yards northeast of where Officer Tice had last seen the driver. Officer Tice testified that he had only seen the back side of the driver, so he was unable to positively identify the driver. Officer Tice also testified, however, that the individual being detained by Officer Brosseau matched his description of the driver in that he was a black male wearing blue jean shorts, white tennis shoes and a red[5] T-shirt, that he was of average build, was 5'7" to 5'10", and had a "short cut afro." Tr. at 38. When subsequently asked if the driver had been wearing a shirt at all, Officer Tice testified that he was sure the driver had a shirt on when he got out of the white vehicle, but he was unsure whether the detained individual was wearing a shirt, although he remembered noticing a tattoo on his chest, which suggested to Officer Tice that the detained individual was not wearing a shirt. Officer Tice further testified it was very warm on the night in question and that the driver ran, not walked, away from him.

Officer Brosseau testified that he was working the night shift on August 17, 2005, and was patrolling in a marked police car when he heard Officer Tice describing a suspect over the radio as a "black male approximately 5'11", medium build, light colored shirt, blue denim shorts and white tennis shoes," which caused him to respond to the general area of the chase. Tr. at 61. As he was assisting in setting up a perimeter, he observed an individual walking westbound on Pleasant Run Parkway, a street northeast of where the white vehicle was parked. The individual did not have a shirt on, but he was wearing denim shorts and white tennis shoes and was carrying a light colored T-shirt in his hand. Officer Brosseau detained the individual, who was later identified to be Goodman, asked him what he was doing, and Goodman answered that he had been playing basketball at a nearby basketball court. Officer Brosseau thought it strange that Goodman would be playing basketball in the dark, as the basketball court he referred to did not have lights. Officer Brosseau detained Goodman until the two passengers in the back of the white vehicle were brought to the scene for purposes of identifying whether Goodman was the driver.[6] Officer Brosseau then arrested Goodman.

---

5. Although Officer Tice testified this description was consistent with that of the driver, Officer Tice had originally identified the driver as wearing a gray T-shirt.

6. Officer Brosseau testified that Officer Tice had informed him that one of the witnesses had identified Goodman as the driver. Nei-

It was subsequently determined that the white vehicle belonged to Vernon Daniels, who testified that the car had been stolen from the driveway of his home on August 17, 2005. The State introduced testimony from Indianapolis Police Department latent fingerprint examiner Linda Stine that Goodman's thumbprint matched a latent print found on the inside driver's front door/window in the white vehicle.

Goodman was charged on August 22, 2005 with auto theft,[7] two counts of resisting law enforcement, two counts of carrying a handgun without a license, and trespass. On November 4, 2005, the State filed an information alleging Goodman to be a habitual offender. The State subsequently dismissed the handgun and trespass charges.

Following a February 13–14, 2006 jury trial,[8] Goodman was convicted of auto theft as a Class D felony and two counts of resisting law enforcement. At a subsequent bench trial, the court found that the auto theft was a Class C felony by reason of an earlier auto theft conviction, and also found Goodman to be a habitual offender. At a March 3, 2006 sentencing hearing, the court sentenced Goodman to six years for the auto theft, enhanced by another four years due to the habitual offender finding, two years executed on the conviction for Class D felony resisting law enforcement, and one year executed on the conviction for Class A misdemeanor resisting law enforcement, with the resisting-law-enforcement sentences to run concurrently with the ten-year sentence for the auto theft conviction.

Upon appeal, Goodman challenges the sufficiency of the evidence to support his conviction and what he claims was the trial court's impermissible "double enhancement" of his sentence by basing his Class C felony auto theft and his habitual offender finding upon the same prior felony.

*Sufficiency of the Evidence*

■ Our standard of review for a sufficiency-of-the-evidence claim is well settled. We do not reweigh the evidence or judge the credibility of the witnesses. *Kien v. State,* 782 N.E.2d 398, 407 (Ind.Ct.App. 2003), *trans. denied.* We consider only the evidence which supports the conviction and any reasonable inferences which the trier of fact may have drawn from the evidence. *Id.* We will affirm the conviction if there is substantial evidence of probative value from which a reasonable trier of fact could have drawn the conclusion that the defendant was guilty of the crime charged beyond a reasonable doubt. *Id.* Reasonable doubt is a doubt which arises from the evidence, the lack of evidence, or a conflict in the evidence. *Id.*

■ Goodman's challenge to the evidence focuses on what he claims was insufficient evidence by the State tending to support the conclusion that he was the driver of the white vehicle. In support of this argument, Goodman argues that the "weakness and uncertainty" of the general physical description of the driver of the white vehicle as provided by Officer Tice was inadequate to identify him as that driver. Appellant's Brief at 8. Goodman also challenges Stine's conclusion that his thumbprint was found on the car by ques-

---

ther of the passengers testified at trial, and there was no objection to this evidence.

**7.** The State charged Goodman with an enhanced Class C felony auto theft based upon what it alleged was his previous conviction for the offense. See I.C. § 35–43–4–2.5.

**8.** A previous jury trial, on November 7–8, 2005, resulted in a mistrial due to the jury's failure to reach a verdict.

tioning her methods for making such conclusions and arguing that none of his fingerprints were found on the car's steering wheel or on the screwdriver inside the car.

Given Goodman's challenge to the evidence on the basis that the State's evidence identifying him as the driver of the car was inadequate, we conclude he is merely inviting us to reweigh the evidence, which we decline to do. While Officer Tice was unable to identify Goodman as the driver, he matched the general description of the driver; he was found in the same direction as the driver had run, approximately 300 yards away; he was in similar attire; he was the only person in the vicinity approximately five to ten minutes after Officer Tice's initial observation of the car; and his explanation for being in the vicinity of the crime was questionable. Further, given the expert evidence identifying Goodman's thumbprint on the stolen car, the jury was free to disbelieve Goodman's apparent defense that the police had mistakenly identified him as the perpetrator. We conclude that the above facts are sufficient to support the jury's verdicts finding Goodman guilty of auto theft and resisting law enforcement beyond a reasonable doubt.

*Sentencing*

■ Goodman also challenges his sentence by claiming it was impermissibly doubly enhanced when the trial court erroneously based his Class C felony auto theft and the habitual offender finding upon the same prior felony conviction. Goodman was charged with auto theft as an en-

hanced Class C felony based upon his August 7, 1998 conviction in Marion County "Room G02" for auto theft, and one of the convictions used to support the habitual offender allegation was also an August 7, 1998 conviction in Marion County "Criminal Division II" for auto theft.[9] App. at 35, 60. The State does not dispute that these are the same crime. The State responds [10] by acknowledging that Indiana courts have in the past disfavored double enhancements, but suggests that the 2001 amendments to Indiana Code § 35–50–2–8, which codified certain Supreme Court opinions regarding double enhancements, demonstrate that double enhancements such as Goodman's, which were not specifically enumerated in these amendments as exceptions, are therefore permissible.

The current version of Indiana Code § 35–50–2–8, as amended in 2001, provides the following in pertinent part:

"(a) Except as otherwise provided in this section, the state may seek to have a person sentenced as a habitual offender for any felony by alleging, on a page separate from the rest of the charging instrument, that the person has accumulated two (2) prior unrelated felony convictions.

(b) The state may not seek to have a person sentenced as a habitual offender for a felony offense under this section if:

(1) the offense is a misdemeanor that is enhanced to a felony in the same proceeding as the habitual offender pro-

---

**9.** The cause number for the prior auto theft conviction used to enhance Goodman's auto theft to a Class C felony was 49G02–9801–CF–005771. No cause numbers were listed for the prior convictions comprising the habitual offender allegation.

**10.** The State first claims that Goodman waived his challenge to his sentence by failing to file a motion to dismiss an "allegedly defec-

tive information." Appellee's Brief at 7. The State provides no authority for this position. We further note that challenges by defendants to double enhancements have been addressed as proper sentencing claims upon direct appeal. *See Ross v. State,* 729 N.E.2d 113 (Ind. 2000); *Stanek v. State,* 603 N.E.2d 152 (Ind. 1992).

ceeding solely because the person had a prior unrelated conviction; [or]

(2) the offense is an offense under IC 9–30–10–16 or IC 9–30–10–17;[11]

\* \* \*

(e) The requirements in subsection (b) do not apply to a prior unrelated felony conviction that is used to support a sentence as a habitual offender. A prior unrelated felony conviction may be used under this section to support a sentence as a habitual offender even if the sentence for the prior unrelated offense was enhanced for any reason, including an enhancement because the person had been convicted of another offense."

In *Townsend v. State*, 793 N.E.2d 1092, 1096–97 (Ind.Ct.App.2003), *trans. denied*, our court, in affirming a defendant's conviction and sentence, found it permissible for the defendant to be convicted of possession of a firearm by a serious violent felon ("SVF"), a Class B felony, and to receive an enhanced sentence as a habitual offender, regardless of the fact that both the SVF charge and the habitual offender allegation were based upon the same prior felony. In reaching this decision, our court took note of the 2001 amendments to I.C. § 35–50–2–8, specifically subsection (b)(1), which codified the court's decision in *Ross v. State*, 729 N.E.2d 113, 117 (Ind. 2000), prohibiting the State from using an enhanced misdemeanor as the underlying felony for a habitual offender allegation. *Townsend*, 793 N.E.2d at 1096. We further observed the amendment to subsection (e), which permitted the State to use

an enhanced conviction as a predicate felony for a habitual offender information, codifying *Haymaker v. State*, 667 N.E.2d 1113, 1115 (Ind.1996).[12] *Townsend*, 793 N.E.2d at 1096. Upon observing, pursuant to *Olatunji v. State*, 788 N.E.2d 1268, 1272 (Ind.Ct.App.2003), *trans. denied*, that these amendments constituted clarifications of, rather than changes to, I.C. § 35–50–2–8; that specific exceptions to the statute were enumerated; and that the statute remained silent regarding whether the use of a single prior felony to create both the underlying felony for the SVF as well as for the habitual offender enhancement qualified as an exception, we concluded that the plain language of the statute did not support the contention that this was an impermissible double enhancement. *Townsend*, 793 N.E.2d at 1097.

In the earlier case of *State v. Downey*, 770 N.E.2d 794, 798 (Ind.2002), however, our Supreme Court had indicated that *"absent explicit legislative direction*, a sentence imposed following conviction under a progressive penalty statute may not be increased further under either the general habitual offender statute or a specialized habitual offender statute." [13] (emphasis in original). In making this statement, our Supreme Court referred with approval to *Stanek v. State*, 603 N.E.2d 152 (Ind.1992), in which it held that a defendant, who had been charged and convicted of operating a motor vehicle while his driving privileges were suspended as a Class C felony, elevated from a Class D felony, could not also be subjected to a further increased sentence under the general habitual offender

---

**11.** These provisions concern offenses for driving with a suspended or forfeited license.

**12.** We further observe that subsection (b)(2), excluding habitual traffic violators, appears to be a codification of *Stanek*, 603 N.E.2d at 153–54.

**13.** Under the reasoning in *Downey*, I.C. § 35–43–4–2.5, which provides for auto theft to be elevated from a Class D felony to a Class C felony, qualifies as a progressive penalty statute, and I.C. § 35–50–2–8 is the general habitual offender statute. *Downey*, 770 N.E.2d at 795–96.

statute. *Downey,* 770 N.E.2d at 796. In approving of that holding, the court stated, "Therefore, under the general rule, the trial court would not be able to use ... the general habitual offender statute ... *absent explicit legislative direction."* *Downey,* 770 N.E.2d at 798 (emphasis in original).

The State suggests that the above rule as articulated in *Downey* is not dispositive with respect to the instant case because, as illustrated in *Townsend,* the General Assembly made specific changes in 2001 indicating certain situations in which habitual offender enhancements were impermissible, and that all other situations involving these enhancements which were not specifically deemed impermissible, such as Goodman's, are permissible.

We first observe that *Townsend* is distinguishable from *Downey* and the instant case. *Townsend* involved a single enhancement only: namely, whether an SVF conviction, a fixed Class B felony, may subsequently be enhanced under I.C. § 35–50–2–8 based upon the same underlying felony as was used to establish the SVF conviction. *See Mills v. State,* 855 N.E.2d 296, 301 (Ind.Ct.App.2006), *trans. pending.* In *Downey,* in contrast, the Supreme Court was focused upon double enhancements such as the one in the case at hand. 770 N.E.2d at 798. Here, Goodman's auto theft was enhanced not once, but twice, first under a progressive penalty statute to a Class C felony, and then to support the habitual offender charge, both of which were based upon the same prior offense. It was these double enhancements which the Supreme Court considered impermissible in *Downey.*

Further, in light of our Supreme Court's clear position in *Downey,* we are unconvinced that the General Assembly's mere failure to specifically enumerate the double enhancement at issue as an exception under amended I.C. § 35–50–2–8 therefore deems it permissible. The Court emphasized in *Downey* that *"absent explicit legislative direction,"* its default position was that double enhancements involving the further enhancement of a conviction already enhanced under a progressive penalty statute were impermissible. 770 N.E.2d at 798. Contrary to the State's suggestion that this holding does not apply to the 2001 amendments to I.C. § 35–50–2–8, we observe that the Supreme Court appeared to be well aware in *Downey* of these 2001 amendments, and it used them to emphasize its belief that they demonstrated the 2001 General Assembly's move toward reducing—not increasing—the number of cases eligible for the habitual offender enhancement under I.C. § 35–50–2–8. *Downey,* 770 N.E.2d at 797 n. 5.

■ We additionally take note of our holding in *Olatunji,* 788 N.E.2d at 1272, that new subsections (b)(1) and (e) were clarifications of the habitual offender statute rather than changes to it, supporting the conclusion that the Supreme Court's interpretation of *Haymaker* and Ross was consistent with the 2001 amendments to I.C. § 35–50–2–8, and that *Downey,* which not only referred to the amendments but endorsed and relied upon *Haymaker* and *Ross* in reasoning that double enhancements were impermissible, is consistent with those amendments as well. Indeed, the General Assembly has failed to further modify these amendments in the five-plus years since they were enacted and the four-plus years since *Downey.* Judicial interpretation of a statute, accompanied by substantial legislative inaction for a considerable time, may be understood to signify the General Assembly's acquiescence and agreement with the judicial interpretation. *See Mills,* 855 N.E.2d at 301–02 (reaffirming *Townsend* ). It appears that the legis-

lature is in acquiescence with the *Downey* interpretation of I.C. § 35–50–2–8.

Under *Downey,* therefore, as it interprets current I.C. § 35–50–2–8, Goodman's double enhancement based upon the same offense—once for auto theft enhanced to a Class C felony and again for being a habitual offender—was impermissible. Having found that Goodman's sentence was impermissibly doubly enhanced, we reverse his habitual offender determination and the four-year sentence enhancement pursuant to that finding, and we remand this cause to the trial court with instructions to resentence Goodman consistent with this opinion.

The judgment of the trial court is affirmed in part, reversed in part, and remanded.

ROBB, J., concurs in result with opinion.

BARNES, J., concurs in part and dissents in part with opinion.

ROBB, Judge, concurring in result with opinion.

I agree that there was sufficient evidence supporting Goodman's convictions. I also agree that the double enhancement of Goodman's sentence was impermissible, but for reasons different than those of my colleague, and I therefore concur in result as to the sentencing issue.

Judge Sullivan concludes that Goodman's sentence was impermissibly doubly enhanced based upon *Downey,* 770 N.E.2d 794, and its interpretation of the current version of Indiana Code section 35–50–2–8. See op. at 905. However, *Downey* was decided in the context of a challenge to an enhancement pursuant to the habitual substance offender statute, a specialized enhancement scheme. Because this case concerns an enhancement pursuant to the general habitual offender statute, I, like Judge Barnes, would not rely on the rea-

soning of *Downey* to support a determination herein. Rather, I believe the reasoning in *Olatunji,* 788 N.E.2d 1268, applies here, albeit with a different result.

In *Olatunji,* a post-conviction petitioner alleged that his habitual offender enhancement was improper because one of the predicate offenses, a 1987 carrying a handgun without a license conviction, was itself enhanced because of a 1986 attempted robbery conviction, which was another of the habitual offender predicate offenses. The petitioner relied on *Ross,* 729 N.E.2d 113, and *Conrad v. State,* 747 N.E.2d 575 (Ind. Ct.App.2001), *trans. denied,* to support his position. In *Ross,* our supreme court held that a misdemeanor carrying a handgun without a license conviction, once elevated to a felony because of a prior felony conviction, should not also be enhanced under the general habitual offender statute. 729 N.E.2d at 117. In *Conrad,* we held that a sentence for possession of a firearm by a serious violent felon could not be enhanced under the general habitual offender statute where the conviction that caused the "serious violent felon" status was also one of the predicate offenses supporting the habitual offender finding. 747 N.E.2d at 595. Noting that "*Ross* and *Conrad* do not broadly prohibit the 'double use' of a prior felony conviction as a sentence enhancement factor under all circumstances, but only where it is twice used as a separate and discrete conviction to doubly enhance a defendant's sentence for one present conviction," we held in *Olatunji* that there was no prohibited double use of the 1986 felony conviction. 788 N.E.2d at 1271. The "concern with 'double' sentence enhancement has always addressed situations where the defendant's sentence for a *present* conviction was enhanced once under a specific progressive penalty statute and again under an habitual offender statute" not, as in *Olatunji,* where a predicate

habitual offender felony had itself been enhanced for some reason. *Id.* at 1273 (emphasis in original). Here, we have exactly the situation that *Olatunji* described as creating double enhancement concerns: Goodman's present conviction for auto theft was enhanced once from a D felony to a C felony under a specific progressive penalty statute, *see* Ind.Code § 35–43–4–2.5(b), because of his prior auto theft conviction, and again under the habitual offender statute in part because of the same prior auto theft conviction.

As we noted in *Mills v. State*, 855 N.E.2d 296, 301 (Ind.Ct.App.2006), the amendment of Indiana Code section 35–50–2–8 clarified that Ross-style double enhancements—where the base level of a crime is subject to enhancement because of a prior conviction—were precluded by the habitual offender statute, whereas *Conrad*-style double enhancements—where the criminal statute contains no independent enhancement scheme—were not. We have here a Ross-style double enhancement, and I therefore agree that Goodman's sentence was impermissibly doubly enhanced.

BARNES, Judge, concurring in part and dissenting in part.

I concur that there is sufficient evidence to support Goodman's convictions. I respectfully dissent, however, from the conclusion that his sentence for Class C felony auto theft cannot be enhanced under the general habitual offender statute, Indiana Code Section 35–50–2–8. Because in another life I filed the enhancements that were overturned in *Stanek*, my attention has focused on these sorts of cases over the years.

I cannot read *Downey* as being helpful in this case because it did not have to apply the general habitual offender statute at all, let alone the 2001 amendments to that statute. Although the opinion briefly discusses the general habitual offender statute, the case turned upon application of the habitual substance offender statute, Indiana Code Section 35–50–2–10, to a sentence for Class D felony possession of marijuana with a prior conviction. *See Downey*, 770 N.E.2d at 798. The only mention of the 2001 amendments to the general habitual offender statute is found in a footnote, where the court states, "As best as we can determine," the legislature had moved to reduce the number of crimes for which habitual offender enhancements would be possible. *Id.* at 797 n. 5. I respectfully submit that this language is dictum that was in no way necessary to the outcome or analysis of the case, nor was there any reason for the legislature to respond to such vague language that lacks any practical effect.

I believe the legislature spoke clearly and definitively when it amended the general habitual offender statute in 2001 so that it states, *"Except as otherwise provided by this section,* the state may seek to have a person sentenced as a habitual offender for *any* felony . . . ." Ind.Code § 35–50–2–8(a) (emphases added). This case does not fall within any of the exceptions for application of the general habitual offender statute listed in subsection (b) of that statute.

It contravenes clear legislative intent to prohibit application of the general habitual offender statute in a case not falling under one of the exceptions to the statute. Class C felony auto theft is "any felony" and it does not fall under one of the express exceptions. I vote to affirm the habitual offender enhancement of Goodman's sentence.